## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRCIT OF TEXAS
## SHERMAN DIVISION

---

NANCY MITCHELL

               Plaintiff               CASE NO.

                                    **JURY TRIAL DEMANDED**

v.

EXPERIAN INFORMATION
SOLUTIONS, INC., EQUIFAX
INFORMATION SERVICES, LLC,
TRANSUNION, LLC, and
JPMORGAN CHASE BANK, N.A.

               Defendants

---

## <u>COMPLAINT</u>

NOW COMES Plaintiff, NANCY MITCHELL (hereinafter the "Plaintiff"), by and through their Counsel of Record to make their allegations known against the Defendants through their complaint that alleges the following:

## <u>PRELIMINARY STATEMENT</u>

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1681 <u>et</u> <u>seq</u>. (Fair Credit Reporting Act).

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff or Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4.   All violations by the Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

5.   Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants named in this Complaint.

## JURISDICTION AND VENUE

6.   Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

7.   Venue in this District is appropriate under 28 U.S.C. §1391(b).

## PARTIES

8.   Plaintiff is a natural person and a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

9.   Defendant Experian Information Solutions, Inc (hereinafter "Experian"), is a For-Profit Corporation with a major processing center in the Eastern District of Texas. Experian is registered to do business in Texas and has a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties.

10. Defendant Equifax Information Services, LLC (hereinafter "Equifax"), is a Foreign For-Profit Limited Liability Company registered to do business in Texas and with a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning

consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, Equifax is reporting consumer credit files on over one million consumers in the Eastern District of Texas.

11. Defendant TransUnion, LLC (hereinafter "TransUnion"), is a Foreign For-Profit Limited Liability Company registered to do business in Texas and with a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, TransUnion is reporting consumer credit files on over one million consumers in the Eastern District of Texas.

12. Defendant JPMorgan Chase Bank, N.A. (hereinafter "Chase"), is a Foreign for-profit company registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C. §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to Credit Reporting Agencies about consumer transactions. Defendant is actively conducting business in the Eastern District of Texas.

## FACTUAL ALLEGATIONS

13. Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

14. The account at issue in this litigation is:

  a Chase Credit Card Account #43885**********

15. On or around September 28, 2023, Plaintiff became the victim of identity theft.

16. Plaintiff first learned of the identity theft when they discovered over $19,000 in fraudulent charges had been made on their Chase Visa credit card.

3

17. The fraudulent charges on Plaintiff's Chase credit card were made in Dubai, Abu Dhabi, and Ajman, United Arab Emirates, as well as Bangkok, Thailand, however, Plaintiff has never been to either of these countries. Some of these charges were clearly made in person and were therefore impossible for Plaintiff to make without being physically present in these locations.

18. On information and belief, Plaintiff's personal identifying information (PII) and credit card information were obtained by a criminal overseas, who then used Plaintiff's information to make the fraudulent charges.

19. Plaintiff informed Chase that the charges were not made by Plaintiff as soon as she discovered them.

20. Prior to the identity theft, Plaintiff never kept a balance on their Chase account.

21. Following the identity theft, none of the charges making up the account balance on the Chase account were made by Plaintiff.

22. Prior to the identity theft and its effects on Plaintiff's credit profile, Plaintiff's credit scores with Experian, Equifax, and TransUnion were approximately 830. 830 is considered an "excellent" credit rating with all three bureaus.

23. Following the identity theft and Chase's subsequent refusal to correct and/or remove the fraudulent charges from Plaintiff's account, in December 2023, Plaintiff mailed dispute letters to the Credit Reporting Agencies (hereinafter "the CRAs") via USPS certified mail.

24. Plaintiff's dispute letters expressly informed the CRAs that Plaintiff was the victim of identity theft, that the CRAs were reporting fraudulent information about the Chase account on their credit reports, and that the CRAs should not trust Chase as an accurate source of information regarding Plaintiff's credit.

25. Plaintiff attached a copy of their driver's license to their dispute letters for identification verification.

26. All three CRAs continued their reporting of the fraudulent and inaccurate account information following Plaintiff's first dispute.

27. After the CRAs continued reporting the inaccurate and fraudulent account information following Plaintiff's first disputes, Plaintiff obtained an FTC Identity Theft Report, as well as a police report from Strongsville Police Department and an IC3 Complaint.

28. Plaintiff then re-disputed the fraudulent and inaccurate account information with the CRAs through dispute packages mailed directly to the CRAs via USPS certified mail. Each of Plaintiff's dispute packages contained a detailed and thorough dispute letter, a copy of Plaintiff's driver's license for identification verification, a copy of Plaintiff's FTC report, a copy of Plaintiff's Police Report, and a copy of Plaintiff's IC3 Complaint.

29. Once again, Plaintiff expressly informed the CRAs that Plaintiff was the victim of identity theft, that the CRAs were reporting fraudulent information about the Chase account on their credit reports, and that the CRAs should not trust Chase as an accurate source of information regarding Plaintiff's credit.

30. Following Plaintiff's second disputes, Experian and Equifax initially continued reporting the disputed fraudulent account information for more than four (4) business days following the receipt of Plaintiff's disputes.

31. Following Plaintiff's second disputes, Experian and Equifax continued reporting the disputed fraudulent account information for more than thirty (30) days following the receipt of Plaintiff's disputes.

32. Following Plaintiff's second dispute, TransUnion initially removed and/or suppressed the disputed Chase account from Plaintiff's TransUnion credit report within four (4) business days of receipt of Plaintiff's dispute.

33. Defendants Experian and Equifax both subsequently removed and/or suppressed the disputed Chase account from Plaintiff's credit reports on or around early to mid-July 2024.

34. On or around late July 2024, however, all three CRAs, however, reinserted the disputed Chase account, including the fraudulent account information and corresponding negative account statuses, on Plaintiff's credit reports.

35. As of August 2, 2024, Plaintiff's credit scores with all three bureaus are in the low 600s, nearly 200 points lower than Plaintiff's credit scores prior to the identity theft.

36. Since the identity theft occurred and the Chase account became past due, Plaintiff has been subjected to constant and incessant phone calls and harassment from Chase regarding the fraudulent charges even though Chase is and has been aware of the identity theft since 2023. Plaintiff's call logs indicate that Plaintiff has received dozens, perhaps hundreds, of phone calls from Chase and other contacts from Chase since the identity theft occurred.

*PLAINTIFF'S EXPERIAN DISPUTE PROCESS*

37. Plaintiff's first Experian dispute dated December 22, 2023, was mailed directly to Experian via USPS certified mail.

38. Plaintiff's first Experian dispute contained a detailed and thorough dispute letter as well as a copy of Plaintiff's driver's license for identification verification.

39. Following their first dispute, Plaintiff received dispute results from Experian dated January 24, 2024, stating that their dispute would not be processed because it did not "appear to have been sent directly by [Plaintiff] or to be authorized by [Plaintiff]."

40. On March 14, 2024, more than thirty (30) days following Experian's receipt of Plaintiff's first dispute, Plaintiff accessed their Experian credit report and found that the fraudulent charges were still being reported on Plaintiff's Experian credit report. Plaintiff's account status on this date was listed as "Closed. $327 past due as of Mar 2024," which is highly derogatory and negative.

41. Plaintiff's second dispute to Experian was delivered and signed for by an Experian employee on May 15, 2024.

42. Plaintiff's second Experian dispute contained a detailed and thorough dispute letter, a copy of Plaintiff's driver's license for identification verification, a copy of Plaintiff's FTC report, a copy of Plaintiff's Police Report, and a copy of Plaintiff's IC3 Complaint.

43. On May 23, 2024, Plaintiff viewed their Experian credit score and found that her FICO8 score was 631, nearly 200 points lower than Plaintiff's pre-identity theft credit score of approximately 830.

44. On May 29, 2024, more than four (4) business days following Experian's receipt of Plaintiff's second dispute, Plaintiff accessed their Experian credit report and found that the fraudulent charges were still being reported on Plaintiff's Experian credit report. Plaintiff's account status on this date was listed as "Closed. $1,324 past due as of May 2024," which is highly derogatory and negative.

45. On July 1, 2024, more than thirty (30) business days following Experian's receipt of Plaintiff's second dispute, Plaintiff accessed their Experian credit report and found that the fraudulent charges were still being reported on Plaintiff's Experian credit report. Plaintiff's account status on this date was listed as "Closed. $1,932 past due as of Jun 2024," which is highly derogatory and negative.

46. On July 12, 2024, Plaintiff accessed their Experian credit report and found that the disputed Chase account was no longer appearing on their Experian credit report.

47. On July 23, 2024, Plaintiff accessed their Experian credit report and found that the disputed Chase account, including the fraudulent account information and corresponding negative account status, was once again appearing on Plaintiff's Experian credit report. Plaintiff's account status on this date was listed as "Closed. $2,539 past due as of Jul 2024," which is highly derogatory and negative.

48. As of July 26, 2024, Plaintiff's Experian FICO8 credit score is 628, approximately 200 points lower than Plaintiff's credit score before the identity theft occurred.

*PLAINTIFF'S EQUIFAX DISPUTE PROCESS*

49. Plaintiff's first Equifax dispute dated December 29, 2023, was delivered and signed for by an Equifax employee on January 22, 2024.

50. Plaintiff's first Equifax dispute contained a detailed and thorough dispute letter as well as a copy of Plaintiff's driver's license for identification verification.

51. On or around February 17, 2024, Plaintiff received dispute results from Equifax dated February 6, 2024. Plaintiff's Equifax results indicated that Equifax had modified the date of last activity and historical account information, however, the fraudulent charges and resulting account balance continued reporting, to the detriment of Plaintiff's credit.

52. On March 14, 2024, more than thirty (30) days following Equifax's receipt of Plaintiff's first dispute, Plaintiff accessed their Equifax credit report and found that the fraudulent charges were still being reported on Plaintiff's Equifax credit report.

53. Plaintiff's second Equifax dispute was delivered and signed for by an Equifax employee on May 18, 2024.

54. Plaintiff's second Equifax dispute contained a detailed and thorough dispute letter, a copy of Plaintiff's driver's license for identification verification, a copy of Plaintiff's FTC report, a copy of Plaintiff's Police Report, and a copy of Plaintiff's IC3 Complaint.

55. On May 16, 2024, Plaintiff's Equifax credit score was 679—much lower than their pre-identity theft score, which was approximately 830.

56. On May 29, 2024, more than four (4) business days after Equifax's receipt of Plaintiff's second dispute, Plaintiff accessed their Equifax credit report and found that the fraudulent charges were still being reported on Plaintiff's Equifax credit report. On this date, Equifax was reporting the account with a past due balance of $1,324, and an account status of "NOT_MORE_THAN_FOUR_PAYMENTS_PAST_DUE," which is highly negative and derogatory.

57. On information and belief, Equifax continued its inaccurate reporting of the disputed account for more than thirty (30) days following its receipt of Plaintiff's second dispute.

58. On July 12, 2024, Plaintiff accessed their Equifax credit report and found that the disputed Chase account was no longer appearing on their Equifax credit report

59. On July 23, 2024, Plaintiff accessed their Equifax credit report and found that the disputed Chase account, including the fraudulent account information and corresponding negative account status, was once again appearing on Plaintiff's Equifax credit report. Plaintiff's Chase account was being reported with a past due balance of $2,539, and an account status of "OVER_120_DAYS_PAST_DUE," which is highly derogatory and negative.

60. As of August 1, 2024, Plaintiff's Equifax credit score is 647, nearly 200 points lower than Plaintiff's credit score before the identity theft occurred.

### *PLAINTIFF'S TRANSUNION DISPUTE PROCESS*

61. Plaintiff's first TransUnion dispute dated December 22, 2023, was mailed directly to TransUnion via USPS certified mail.

62. Plaintiff's first TransUnion dispute contained a detailed and thorough dispute letter as well as a copy of Plaintiff's driver's license for identification verification.

63. Following Plaintiff's first TransUnion dispute, Plaintiff received a letter from TransUnion dated January 27, 2024, indicating that that TransUnion would not be processing Plaintiff's dispute because "it didn't appear that [Plaintiff] or a properly authorized third party sent it to [TransUnion]."

64. As a result, TransUnion continued its inaccurate reporting of the fraudulent charges on the Chase account for more than thirty (30) days following Plaintiff's first dispute.

65. Plaintiff's second TransUnion dispute was delivered and signed for by a TransUnion employee on July 1, 2024.

66. Plaintiff's second TransUnion dispute contained a detailed and thorough dispute letter, a copy of Plaintiff's driver's license for identification verification, a copy of Plaintiff's FTC report, a copy of Plaintiff's Police Report, and a copy of Plaintiff's IC3 Complaint

67. Following Plaintiff's second TransUnion dispute, Plaintiff received TransUnion dispute results dated July 5, 2024, indicating that the disputed Chase account had been removed from Plaintiff's credit report.

68. On July 9, 2024, Plaintiff accessed their TransUnion credit report and found that the disputed Chase account was no longer appearing on their TransUnion credit report.

69. Later in July 2024, Plaintiff received a letter from TransUnion dated July 17, 2024, indicating that TransUnion had reinserted the disputed Chase account, including the fraudulent

account information and corresponding negative account status, on Plaintiff's TransUnion credit report.

70. On July 23, 2024, Plaintiff accessed their TransUnion credit report and found that the disputed Chase account, including the fraudulent account information and corresponding negative account status, had indeed been reinserted by TransUnion. On this date, the disputed Chase account was being reported by TransUnion with a past due balance of $2,539, and a pay status of ">Account 120 Days Past Due Date<," which is highly derogatory and negative.

71. As of August 1, 2024, Plaintiff's TransUnion FICO8 credit score is 640, nearly 200 points lower than Plaintiff's credit score before the identity theft occurred.

*PLAINTIFF'S DAMAGES*

72. As a result of Defendants' violations of the FCRA, Plaintiff is entitled to actual, statutory, and punitive damages, along with their attorneys' fees and costs in this matter. Defendants' conduct was such that Defendants acted willfully, intentionally, recklessly, and/or negligently in their actions related to Plaintiff.

73. The conduct of the Defendants was a direct and/or proximate cause, as well as a substantial factor in bringing about injuries, damages, and harm suffered by Plaintiff. Plaintiff continues to suffer as a result of Defendants' conduct. Plaintiff expects their damages to continue to accrue and be ongoing until they are made whole again if that ever occurs.

74. Defendants, due to their conduct, are liable to compensate Plaintiff for the full amount of actual, statutory, compensatory, and punitive damages, as well as such other relief permitted by law. Plaintiff has suffered the following types of damages due to the conduct of Defendants:

        a   Emotional damages in the form of mental anguish, humiliation, and embarrassment. As a result of Defendants' conduct, Plaintiff has suffered from

severe and debilitating stress, anxiety, and depression. Plaintiff feels highly emotional and nervous on a daily basis as a result of the identity theft's effect on Plaintiff's credit. Plaintiff's emotional damages have been worsened continually by Chase's constant harassment regarding the charges that were not made by Plaintiff.

b   Physical manifestations of mental anguish, humiliation, and embarrassment. As a result of the debilitating stress Plaintiff has been under since the identity theft occurred, Plaintiff has lost sleep on a near-nightly basis. Plaintiff's mental anguish has also caused Plaintiff to feel confused and often leads Plaintiff to feel as though they cannot gather their thoughts. Plaintiff has felt abnormal since the identity theft and resulting stress began. Plaintiff cries frequently and has felt helpless as a result of Defendants' conduct.

c   Damages to Plaintiff's creditworthiness, credit reputation, and borrowing power. Prior to the identity theft, Plaintiff maintained an excellent credit profile with credit scores in the 800s with all three CRAs. Since the identity theft began, Plaintiff's credit scores have plummeted approximately 200 points. As of August 2, 2024, Plaintiff's credit scores are in the low 600s. As a result of the identity theft, Plaintiff's creditworthiness, credit reputation, and borrowing power have been ruined.

75. Plaintiff's damages caused by and through the conduct of Defendants are more specifically described as follows:

a   Emotional damages in the form of mental anguish, humiliation, embarrassment, depression, and anxiety.

      b   Physical manifestations of stress and anxiety, including recurring loss of sleep, confusion, and feelings of helplessness.

      c   Financial damages, including damage to Plaintiff's creditworthiness, credit reputation, and borrowing power.

      d   All other damages as described above.

76. Plaintiff's damages attributable to Defendants are serious, continuing, and ongoing.

77. Defendants' actions have led to Plaintiff's great detriment and loss and are caused by the conduct of Defendants described herein.

## CAUSES OF ACTION

78. Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

79. This suit is based upon the Defendants' violations of the Fair Credit Reporting Act (FCRA). All causes of action were the producing causes of damages which Plaintiff has suffered.

## VIOLATIONS OF THE FAIR CREDIT REPORTNG ACT (FCRA)

80. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

81. The FCRA defines a "Consumer Reporting Agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

82. Defendants Experian, Equifax, and TransUnion are Consumer Reporting Agencies pursuant to the FCRA and will collectively be referred to as "the CRAs," or "the CRA Defendants."

83. The FCRA defines a "Person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

84. The Code of Federal Regulations defines a "Furnisher" as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 CFR § 1022.41(c).

85. Defendant Chase is a "Person" pursuant to the FCRA, and "Furnisher" pursuant to the Code of Federal Regulations (CFR) and will be referred to as "Chase," "the Data Furnisher," or "the Data Furnisher Defendant."

86. The following conduct of the CRAs and the Data Furnisher was a direct and/or proximate cause, as well as a substantial factor in, and/or producing cause bringing about the serious injuries, damages, and harm that Plaintiff has suffered and continues to suffer as of the filing of this Complaint. Plaintiff expects the damage caused by the CRAs and the Data Furnisher to continue to accrue and be ongoing until Plaintiff is made whole again.

87. The CRAs and the Data Furnisher, as defined above, acted in a manner that was willful, intentional, reckless, and/or negligent in their actions related to Plaintiff. As a result of these Defendants' violations of the FCRA, which are listed below, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

88. Plaintiff's damages attributable to the CRAs and the Data Furnisher are described in detail in paragraphs 72-77 above.

89. Plaintiff's damages attributable to the CRAs and the Data Furnisher are serious, continuing, and ongoing.

90. This suit is brought against the Defendants for violations of the FCRA which are the causes of Plaintiff's damages. In all instances of violating the FCRA, Defendants did so willfully, intentionally, recklessly, and/or negligently. Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys' fees under 15 U.S.C. §1681n and §1681o.

<u>**COUNT I:**</u>
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(The CRA Defendants: Experian, Equifax, and TransUnion)**

91. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

92. The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

93. The CRAs maintained fraudulent and inaccurate information about Plaintiff and prepared credit reports regarding Plaintiff containing fraudulent information.

94. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the CRAs readily stored, prepared, reported, and/or sold reports containing fraudulent and inaccurate information about Plaintiff, and in doing so, the CRAs suggested that Plaintiff was responsible for charges and account information that was the product of identity theft.

95. The CRAs' conduct as to Plaintiff was such that a third party who viewed Plaintiff's credit reports could reasonably infer that the fraudulent and inaccurate information being reported by the CRAs was accurate, to Plaintiff's great detriment.

96. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit files and/or reports they maintained and published about Plaintiff.

97. Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would have known that the information being reported about Plaintiff was fraudulent and inaccurate.

98. Plaintiff disputed the fraudulent and inaccurate charges made on their Chase account through dispute packages mailed directly to the CRAs via USPS certified mail. In these dispute packages, Plaintiff expressly informed the CRAs that Plaintiff was the victim of identity theft and that the disputed charges and account information did not belong to Plaintiff. Plaintiff instructed the CRAs not to rely on the Data Furnisher for accurate information about their credit and to conduct an independent investigation into Plaintiff's dispute.

99. Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would have deleted and/or blocked the reporting of the fraudulent and inaccurate information after being put on notice of the identity theft from Plaintiff's dispute package.

**COUNT II:**
**15 U.S.C. § 1681i(a)(1)(A)**
**Failure to Conduct a Reasonable Investigation into Plaintiff's Dispute**
**(The CRA Defendants: Experian, Equifax, and TransUnion)**

100.    Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

101.    The FCRA provides:

[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such

dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…. before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

102.    Plaintiff disputed the fraudulent and inaccurate account through dispute packages mailed directly to the CRAs via USPS certified mail. Plaintiff's dispute packages contained a detailed and thorough dispute letter, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, and a copy of Plaintiff's driver's license for identification verification.

103.    Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate account was reporting inaccurately on Plaintiff's credit reports as a result of identity theft.

104.    After Plaintiff verified that their dispute packages had been delivered to the CRAs by USPS, Plaintiff waited more than thirty (30) days before viewing their credit reports following their dispute.

105.    After pulling new credit reports, Plaintiff found that the disputed account remained on their credit report following the CRAs' processing of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i(a)(1)(A).

106.    Plaintiff provided the CRAs with ample information proving that the disputed account was reporting inaccurately as a result of identity theft. Had the CRAs conducted a reasonable investigation in accordance with the requirements imposed by the FCRA, they would have deleted the item from Plaintiff's credit file before the end of the thirty (30) day period.

<u>**COUNT III:**</u>
**15 U.S.C. § 1681i(a)(4)**

17

**Failure to Read and Consider Documents Attached to Plaintiff's Dispute**
**(Defendants Experian, Equifax, and TransUnion)**

107.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

108.     The FCRA provides that "[i]n conducting any reinvestigation under [15 U.S.C. § 1681i(a)(1)], with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the [30-day] period described in [15 U.S.C. § 1681i(a)(1)(A)] with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

109.     Plaintiff disputed the fraudulent and inaccurate account through dispute packages mailed directly to the CRAs via USPS certified mail. Plaintiff's dispute packages contained a detailed and thorough dispute letter, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, and a copy of Plaintiff's driver's license for identification verification.

110.     Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate account was reporting inaccurately on Plaintiff's credit reports as a result of identity theft.

111.     Plaintiff, through their dispute package, provided the CRAs with documents sufficient to prove that Plaintiff was the victim of identity theft, however, the CRAs failed to review and consider all relevant documents submitted by Plaintiff, in violation of 15 U.S.C. § 1681i(a)(4).

112.     Had the CRAs acted in accordance with the investigation requirements imposed by the FCRA and reviewed and considered each document contained in Plaintiff's dispute package,

it would have been easy for the CRAs to determine that Plaintiff was the victim of identity theft and delete and/or suppress the disputed information accordingly.

**COUNT IV:**
**15 U.S.C. § 1681i(a)(5)(A)**
**Failure to Delete and/or Modify the Disputed Information**
**(Defendants Experian, Equifax, and TransUnion)**

113.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

114.     The FCRA provides that:

> (5) Treatment of Inaccurate or Unverifiable Information
>
> (A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-
>
> (i)   promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>
> (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

15 U.S.C. §1681i(a)(5)(A).

115.     Plaintiff disputed the fraudulent and inaccurate account through dispute packages mailed directly to the CRAs via USPS certified mail. Plaintiff's dispute packages contained a detailed and thorough dispute letter, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, and a copy of Plaintiff's driver's license for identification verification.

116.     Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate account was reporting inaccurately on Plaintiff's credit reports as a result of

identity theft, yet the CRAs failed to delete fraudulent and inaccurate information disputed by Plaintiff.

117.     After pulling new credit reports following their dispute, Plaintiff found that the CRAs continued their reporting of the fraudulent and inaccurate account disputed by Plaintiff, in violation of the FCRA.

118.     The CRAs violated their duty under 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed information from Plaintiff's credit files and/or credit reports.

119.     Had the CRAs conducted a reasonable investigation into Plaintiff's dispute as required by statute, they would have easily found that Plaintiff was the victim of identity theft and promptly deleted the disputed items from Plaintiff's credit files and/or credit reports in accordance with the FCRA. Instead, the CRAs continued their inaccurate credit reporting about Plaintiff, to Plaintiff's great detriment.

**COUNT V:**
**15 U.S.C. § 1681i(a)(5)(B)**
**Reinsertion of Deleted Information**
**(Defendants Experian, Equifax, and TransUnion)**

120.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

121.     The FCRA provides that "[i]f any information is deleted from a consumer's file pursuant to [15 U.S.C. §1681i(a)(5)(A)], the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate." 15 U.S.C. § 1681i(a)(5)(B)(i).

122.     After pulling new credit reports following the CRAs' processing of Plaintiff's second disputes, Plaintiff found that the CRAs initially deleted and/or suppressed their reporting of the fraudulent and inaccurate account disputed by Plaintiff.

123.     However, Plaintiff learned on a later date that the disputed account had once again begun reporting by the CRAs on Plaintiff's credit reports.

124.     The CRAs violated 15 U.S.C. §1681i(a)(5)(B)(i) when it reinserted the previously deleted Chase account on Plaintiff's credit files and/or credit reports.

125.     Had the CRAs acted in accordance with the requirements of the FCRA, they would have known from their own investigation based on the information provided by Plaintiff that the account was the product of identity theft, and they would not have reinserted and resumed their reporting of the fraudulent and inaccurate account on Plaintiff's credit files and/or credit reports.

## COUNT VI:
### 15 U.S.C. § 1681i(a)(5)(C)
### Failure to Follow Reasonable Procedures to Prevent Reappearance of Deleted Information
### (Defendants Experian, Equifax, and TransUnion)

126.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

127.     The FCRA provides that "[a] consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted…." 15 U.S.C. § 1681i(a)(5)(C).

128.     After pulling new credit reports following the CRAs' processing of their disputes, Plaintiff found that the CRAs deleted and/or suppressed the reporting of the fraudulent and inaccurate account disputed by Plaintiff.

129.     However, Plaintiff learned on a later date that the disputed account had once again begun reporting by the CRAs on Plaintiff's credit report.

130.     The CRAs violated 15 U.S.C. § 1681i(a)(5)(C) by failing to maintain reasonable procedures designed to prevent the reappearance of the fraudulent and inaccurate account that was

initially deleted and/or suppressed from Plaintiff's credit files and/or credit reports by the CRAs following Plaintiff's disputes.

131.     Had the CRAs acted in accordance with their duties under the FCRA, the CRAs would not have reinserted the fraudulent and inaccurate account on Plaintiff's credit files and/or credit reports.

**COUNT VII:**
**15 U.S.C. § 1681c-2(a)**
**Failure to Block the Reporting of Identity Theft Information within Four (4) Business Days**
**(Defendants Experian, Equifax, and TransUnion)**

132.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

133.     The FCRA provides the following:

[A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identities as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of—

(1) appropriate proof of identity of the consumer;

(2) a copy of an identity theft report;

(3) the identification of such information by the consumer; and

(4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).

134.     After Plaintiff discovered the fraudulent and inaccurate account information appearing on their credit reports, Plaintiff disputed the account through dispute packages mailed directly to the CRAs via USPS certified mail.

135.     Plaintiff's dispute packages contained a detailed and thorough dispute letter in which Plaintiff stated that they were the victim of identity theft. Plaintiff's dispute letters also identified the fraudulent and inaccurate account by name and account number. Plaintiff's dispute packages also included a copy of Plaintiff's FTC identity theft report, a copy of Plaintiff's police report, and a copy of Plaintiff's driver's license for identification verification.

136.     After pulling new credit reports more than four (4) business days following the delivery of Plaintiff's dispute packages, Plaintiff found that the Experian and Equifax had continued reporting the fraudulent and inaccurate account information on Plaintiff's credit reports in violation of the FCRA. TransUnion would initially remove the Chase account upon receiving Plaintiff's dispute package but would later re-insert the account after four (4) business days had passed from TransUnion's receipt of Plaintiff's dispute package.

137.     Experian and Equifax violated 15 U.S.C. § 1681c-2(a) when, based on information and belief, they failed to block the reporting of information in Plaintiff's consumer file that Plaintiff identified as having resulted from an alleged identity theft within four (4) business days of receipt of proof of identity, a copy of Plaintiff's identity theft report, identification of identity theft-related information, and Plaintiff's statement that the fraudulent and inaccurate account information was the product of identity theft.

138.     TransUnion violated 15 U.S.C. § 1681c-2(a) when, based on information and belief, they failed to maintain a block on the reporting of information in Plaintiff's consumer file that Plaintiff identified as having resulted from an alleged identity theft after four (4) business days of receipt of proof of identity, a copy of Plaintiff's identity theft report, identification of identity theft-related information, and Plaintiff's statement that the fraudulent and inaccurate account information was the product of identity theft.

139.     Had the CRAs acted in accordance with their duties under the FCRA, they would have blocked the reporting of the fraudulent and inaccurate account identified by Plaintiff as resulting from identity theft within four (4) business days of receipt of Plaintiff's dispute packages.

<u>**COUNT VIII:**</u>
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct a Reasonable Investigation of the Information Disputed by Plaintiff**
**(Defendant Chase)**

140.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

141.     The FCRA provides the following:

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –

  (A)     Conduct an investigation with respect to the disputed information;

  (B)     Review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

  (C)     Report the results of the investigation to the consumer reporting agency;

  (D)     If the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

  (E)     If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

    (i)     Modify that item of information;
    (ii)    Deleted that item of information; or
    (iii)   Permanently block the reporting of that information.

15 U.S.C. § 1681s-2(b).

142.     On information and belief, Chase received notice of Plaintiff's disputes from the CRAs following each of Plaintiff's disputes.

143.     On information and belief, Chase received Plaintiff's dispute letters and attached documents from the CRAs.

144.     Chase was provided with more than enough information and documents to determine that the disputed account was fraudulent and inaccurate, however, Chase, on multiple occasions, verified the account as accurate and instructed the CRAs to continue their inaccurate credit reporting regarding Plaintiff.

145.     Defendant Chase violated 15 U.S.C. § 1681s-2(b) when it failed to conduct a reasonable and good faith investigation into Plaintiff's dispute and failed to delete, suppress, and/or correct the fraudulent and inaccurate information disputed by Plaintiff.

146.     Had Chase acted in accordance with its duties under the FCRA, it would have found that the disputed account was, indeed, reporting inaccurately as a result of identity theft, and instructed the CRAs to delete, suppress, and/or correct the information disputed by Plaintiff.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff seeks a trial by jury and a judgment in Plaintiff's favor against Defendants based on the following requested relief:

a.   Actual and compensatory damages pursuant to 15 U.S.C. § 1681;

b.   Statutory damages pursuant to 15 U.S.C. § 1681;

c.   Punitive damages pursuant to 15 U.S.C. § 1681;

d.   Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o,

e.   Such other and further relief as may be necessary, just and proper.


Dated: August 6, 2024

Respectfully Submitted,

/s/Kyle Kaufman
Kyle Kaufman
ATTORNEY FOR PLAINTIFF
Louisiana Bar Roll No. 39232
Raburn Kaufman, LLC
8570 Anselmo Lane
Baton Rouge, Louisiana 70810
kkaufman@raburnkaufman.com
Telephone: 225-412-2777


/s/Jonathan Raburn
Jonathan Raburn
ATTORNEY FOR PLAINTIFF
Louisiana Bar Roll No. 28728
Raburn Kaufman, LLC
8570 Anselmo Lane
Baton Rouge, Louisiana 70810
jraburn@raburnkaufman.com
Telephone: 225-412-2777